IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

MAR - 6 2019

RICK WARREN
COURT CLERK

31_____

| | |
|---|---|
| KELLY McNEARY, individually, and as Administrator of the Estate of THOMAS LEEWALTER McNEARY, Deceased, | ) ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) )   Case No.: **CJ-2019-1266** |
| STATE OF OKLAHOMA, ex rel. OKLAHOMA DEPARTMENT OF CORRECTIONS, | ) ) ) ) |
| Defendant. | ) |

## PETITION

COMES NOW, Plaintiff, Kelly McNeary, individually and as Administrator of the Estate of Thomas Leewalter McNeary, Deceased, and for her cause of action against the Defendant State of Oklahoma, ex rel. Oklahoma Department of Corrections alleges and states the following:

### JURISDICTION AND PARTIES

1. Plaintiff Kelly McNeary ("Plaintiff") is an individual residing in Oklahoma County, Oklahoma. Plaintiff is the mother of Thomas Leewalter McNeary.

2. Plaintiff was appointed the Administrator of the Estate of Thomas Leewalter McNeary and issued Letters of Administration on February 19, 2019.

3. Thomas Leewalter McNeary ("McNeary") was an individual who resided in Oklahoma County prior to his death on August 23, 2017. McNeary was, at all times relevant

1

**EXHIBIT 2**

to the claims in this action, an inmate in the custody of Defendant State of Oklahoma, ex rel. Oklahoma Department of Corrections.

4. Defendant, State of Oklahoma ex rel. Oklahoma Department of Corrections ("ODOC") is an Oklahoma Governmental Agency, with its primary offices located in Oklahoma County, Oklahoma.

5. Plaintiff brings this action against the State of Oklahoma, by way of the Oklahoma Department of Corrections pursuant to Oklahoma State and United States Constitutional law, 42 USC § 1983.

6. The wrongful acts and omissions of Defendants and the facts giving rise to Plaintiff's claim occurred in Lexington, Cleveland County, Oklahoma.

## FACTS OF THE CASE

Plaintiff re-alleges and incorporates by reference Paragraph Nos. 1 through 6 above, and further alleges the following:

Thomas McNeary

7. McNeary has a history of mental/psychological illness. He was treated for mental illness at Cedar Ridge in April 2013 and at other times prior to 2014.

8. McNeary was incarcerated in the Oklahoma County Jail from July 24, 2014, until October 1, 2015.

9. While incarcerated at the Oklahoma County Jail, and during the pendency of his criminal proceedings, McNeary was subject to an Order for Determination of Competency. While he was found competent to continue the criminal proceedings, McNeary had the mental capacity of a teenager.

2

10. On October 1, 2015, McNeary was transferred to the Lawton Assessment & Reception Center.

11. At his reception to ODOC on October 1, 2015, ODOC was aware of McNeary's history of mental illness and self harming.

12. On October 23, 2015, McNeary was transferred to Joseph Harp Correctional Center ("JHCC") in Lexington, Oklahoma.

13. On November 30, 2016, McNeary was transferred to the Lawton Correctional Facility ("LCF").

14. During his time at LCF, McNeary attempted suicide 13 times, and was put on suicide watch.

15. McNeary was disciplined for self-harm behaviors while in the ODOC custody. As a result of self harm, his canteen privileges were restricted for a period of 60 days.

16. On August 10, 2017, McNeary was transferred back to JHCC. He resided at JHCC as an inmate until his death.

17. Several days after his transfer to JHCC, McNeary was taken off suicide watch and placed in a therapeutic unit.

18. Upon information and belief, the therapeutic unit at JHCC has cameras in every cell and guards who patrol every cell every 15 minutes.

19. On August 23, 2017, McNeary was found in his cell in the therapeutic unit of JHCC having committed suicide.

20. When he was found, it is believed that McNeary had been deceased for approximately 30 minutes.

## The Oklahoma Department of Corrections

21. In February 2017—six months prior to McNeary's death—ODOC was ordered to cut $2.964 million due to revenue failure.[1] ODOC Director Joe Allbaugh stated the "announcement comes at a time when our state prisons are severely understaffed, well over capacity and have in excess of $2 billion in infrastructure needs. The result may come at an increased risk to public safety." Director Allbaugh began the process of attempting to close the budget gap at the ODOC. He instituted a hiring freeze[2], he canceled 10 county jail contracts[3], and he instituted a purchasing freeze[4].

22. On August 31, 2017, the ODOC set a population record of 63,009 people in the ODOC's system. This was the third record-breaking number of people in less than one year—December 2016 had a record of 61,012 (a record which Director Allbaugh called "a sobering reminder of how overpopulated and dangerous the state's prison system continues to be"[5]) and April 2017 saw 62,000 (at which point Director Allbaugh stated, "In the short-term the only thing we can do is hope and pray the legislature will step up and give us the necessary money to acquire, rent, beg, or borrow more additional beds to handle the influx."[6]). This included 26,730 incarcerated individuals.[7]

---

[1] "Corrections Director Joe M. Allbaugh Comments on Revenue Failure." 21 Feb. 2017, doc.ok.gov/corrections-director-joe-m-allbaugh-comments-on-revenue-failure
[2] "Corrections Director Joe M. Allbaugh Issues Agency Hiring Freeze." 23 Feb. 2017, doc.ok.gov/corrections-director-joe-m-allbaugh-issues-agency-hiring-freeze
[3] "Oklahoma DOC Director Joe M. Allbaugh Cancels 10 County Jail Contracts." 8 Mar. 2017, doc.ok.gov/oklahoma-doc-director-joe-m-allbaugh-cancels-10-county-jail-contracts
[4] "Oklahoma DOC Director Announces Agency Purchasing Freeze." 13 Mar. 2017, doc.ok.gov/oklahoma-doc-director-announces-agency-purchasing-freeze
[5] "Oklahoma DOC Population Surpasses 61,000 Individuals for First Time in Agency History." 16 Dec. 2016, doc.ok.gov/oklahoma-doc-population-surpasses-61000-individuals-for-first-time-in-agency-history
[6] "ODOC Population at 62,000 – Another agency population record." 26 Apr. 2017, doc.ok.gov/odoc-population-at-62000-another-agency-population-record
[7] "DOC Sets New System Population Record." 31 Aug. 2017, doc.ok.gov/doc-sets-new-system-population-record

23.     On September 26, 2017, approximately one month after McNeary's death, ODOC Director Joe Allbaugh announced that some inmates would be released early to ease overcrowding. Director Allbaugh stated that the decision was made "because our prisons are overpopulated" and that "ODOC has to find other ways allowed under statute to manage this dire situation." At that time, ODOC reported state facilities were at 109% capacity, including 26,871 incarcerated individuals.[8]

24.     In a press release in October 2017, Director Allbaugh stated that ODOC is "underfunded, understaffed and overcrowded." He further stated, "With respect to those in our custody, 58% have a history of or are currently receiving treatment for their mental health needs. The number of inmates with mental health needs has grown by 24% since 2013."[9]

### COUNT I: Violations of 42 U.S.C. § 1983

Plaintiff re-alleges and incorporates by reference Paragraph Nos. 1 through 24 above, and further alleges the following:

25.     Defendant ODOC is responsible for inmate safety at JHCC.

26.     Defendant is constitutionally obligated to provide reasonable, timely medical care to inmates.

27.     While McNeary was incarcerated by Defendant he was at obvious risk of committing suicide.

---

[8] Ellis, Randy. "Oklahoma Prison System to Release Some Inmates Early to Ease Overcrowding." NewsOK, 27 Sept. 2017, newsok.com/article/5565682/oklahoma-prison-system-to-release-some-inmates-early-to-ease-overcrowding
[9] "DOC Director Calls for Immediate Action on State Budget." 18 Oct. 2017, doc.ok.gov/doc-director-calls-for-immediate-action-on-state-budget

28. Defendant knew that McNeary was in danger of serious harm to his health and safety, including being at obvious risk of committing suicide, due to (1) his transfer from LCF to JHCC for evaluation due to his suicidal behavior; (2) plentiful documentation in his record, including, but not limited to, his Reception Information and Disciplinary Disposition Reports setting forth his self-harming behavior.

29. Defendant ignored McNeary's symptoms, which were obvious and immediate threats to his health and safety.

30. Despite knowing McNeary was in danger of serious harm to his health and safety, Defendant failed to provide him with necessary evaluation and treatment, or failed to take action to provide him with necessary evaluation and treatment.

31. Defendant's acts and/or omissions including, but not limited to, the failure to provide McNeary with timely and adequate psychiatric and medical care and/or take other measures to protect him from serious harm, constitute deliberate indifference to McNeary's serious medical needs, health, and safety, and subjected McNeary to pervasive risk of harm and to actual harm in violation of the Eighth Amendment to the United States Constitution.

32. Defendant's deliberate indifference for the safety of McNeary led to McNeary having sufficient time to tear the sheets in his cell and hang himself, causing McNeary's death, and resulting in harm to Plaintiff.

33. Defendant is liable for its deliberate indifference for the safety of McNeary and ensuing suicide.

34. Defendant's deliberate indifference towards the safety of McNeary directly damaged Plaintiff in an amount in excess of $75,000.00.

35. The aforementioned acts and/or omissions of Defendant in being deliberately indifferent to McNeary's serious medical needs, health and safety and in violating decedent's civil rights were the direct and proximate result of customs, practices or policies, or the lack thereof, of Defendant.

36. Such customs, practices, policies and/or procedures include, but are not limited to, an ongoing pattern of deliberate indifference to the serious medical needs and health and safety of ODOC inmates, including the following: a failure to ensure implementation of appropriate medical and emergency treatment plans; a failure to act upon clearly life-threatening symptoms and reports and/or clear suicidal impulses or gestures; a failure to provide appropriate staffing and training at JHCC for providing inmates with adequate medical and psychiatric treatment; a failure to implement a policy to ensure that staff would contact and summon emergency medical and/or psychiatric treatment in a timely manner; a failure to create and/or implement guidelines that must be followed to remove inmates from existing suicide precautions; a failure to create, implement and/or ensure that staff follow policies, guidelines or steps to be taken when medical staff observe custody staff choosing to ignore orders given by an inmate's medical doctors; a failure to adequately train and supervise employees and/or agents to prevent the occurrence of the constitutional violations alleged herein; and a failure to promulgate appropriate policies or procedures or take other measures to prevent the constitutional violations alleged herein.

37. As a direct and proximate result of the aforementioned customs, practices, policies and/or procedures of said Defendant, or as a result of Defendant's failure to promulgate appropriate policies or procedures, McNeary suffered the damages alleged

herein, including but not limited to physical pain and suffering, emotional distress, mental anguish, and loss of his life.

38. The constitutional violations by Defendants as alleged herein occurred as a result of the failure of Defendant to adequately supervise, investigate and discipline employee conduct.

39. Defendant failed to adequately supervise, investigate and discipline subordinate employees in regard to preventing deliberate indifference to the serious medical needs, health and safety of inmates at JHCC. Defendant's failure to supervise, investigate and discipline employees amounted to deliberate indifference to inmates' right to be free of deliberate indifference to their serious medical needs, health and safety.

40. As a direct and proximate result of the aforementioned failure to supervise, investigate and/or discipline, McNeary suffered the damages alleged herein, including but not limited to physical pain and suffering, emotional distress, mental anguish, and loss of his life.

41. The constitutional violations by Defendants as alleged herein occurred as a direct and proximate result of inmate overcrowding.

42. The acts and/or omissions of Defendant as alleged herein, in being deliberately indifferent to the serious medical needs of decedent McNeary by failing to summon or provide McNeary with medical care, psychiatric care and/or take other measures to prevent his death after noticing his suicidal impulses, suicidal condition and/or need for medical attention, resulted in McNeary's suicide and/or death, which deprived Plaintiff of her liberty

interest in the parent-child relationship in violation of her substantive due process rights as defined by the First and Fourteenth Amendments to the United States Constitution.

43. Such conduct by Defendant "shocks the conscience."

44. As a direct and proximate result of Defendant's conduct, Plaintiff suffered injuries and damages as alleged herein including pain and suffering and emotional distress.

45. The aforementioned acts and/or omissions of Defendant was willful, wanton, malicious, reckless, and oppressive, thereby justifying an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff, Kelly McNeary, individually and as Administrator of the Estate of Thomas Leewalter McNeary, Deceased, respectfully requests judgment against Defendant for:

   i. Damages in excess of $75,000.00;

   ii. Pre and post-judgment interest at the statutory rate;

   iii. Plaintiff's reasonable attorney's fees and costs incurred in the prosecution of this action and in the post-judgment collection of the debt; and

    iv.    Any and all other relief this Court deems fair and just.

                            Respectfully submitted,

                            */s/ Rand C. Eddy*
                            Rand C. Eddy, OBA# 11822
                            MULINIX GOERKE & MEYER, P.L.L.C.
                            210 Park Avenue, Suite 3030
                            Oklahoma City, OK 73102
                            Telephone: (405) 232.3800
                            Fax: (405) 232.8999
                            rand@lawokc.com
                            *Attorney for Plaintiff*