# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KELLY McNEARY, individually, and as Administrator of the Estate of Thomas Leewalter McNeary, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. CIV-19-239-D |
| CARL BEAR, an individual, | ) ) ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Defendant's Motion to Dismiss for Failure to State a Claim [Doc. No. 8], to which Plaintiff has responded in opposition [Doc. No. 11]. The matter is fully briefed and at issue.

## BACKGROUND

This case arises out of the death, by suicide, of Thomas Leewalter McNeary while he was an inmate at the Joseph Harp Correctional Center ("JHCC") in Lexington, Oklahoma, on August 23, 2017. Plaintiff Kelly McNeary, as Special Administrator of Mr. McNeary's estate and his mother, asserts 42 U.S.C. § 1983 claims against Defendant Carl Bear, the warden at JHCC. To summarize, the First Amended Complaint [Doc. No. 4] alleges in relevant part:

- McNeary had a history of mental illness, self-harming, and suicide attempts prior to his transfer to JHCC on August 10, 2017.

- Defendant was aware of McNeary's history of mental illness, self-harming, and suicide attempts.

- Several days after his transfer to JHCC, McNeary was taken off suicide watch and placed in a therapeutic unit.

- The therapeutic unit had cameras in every cell and guards who patrolled each cell every 15 minutes.

- On August 23, 2017, McNeary was found dead, by suicide, in his cell in the therapeutic unit.

- It is believed that McNeary had been dead for about 30 minutes when he was found.

- Defendant is responsible for inmate safety at JHCC and is constitutionally obligated to provide reasonable and timely medical care to inmates.

- McNeary was at obvious risk of committing suicide, and Defendant knew this. However, Defendant failed to provide McNeary with the necessary evaluation and treatment.

- "Defendant's deliberate indifference for the safety of McNeary led to McNeary having sufficient time to tear the sheets in his cell and hang himself, causing McNeary's death, and resulting in harm to Plaintiff." *Id*. at ¶ 40.

- Because of Defendant's failure to promulgate appropriate policies and procedures, Plaintiff suffered damages.

- Defendant failed to adequately supervise, investigate, and discipline subordinate employees in relation to preventing deliberate indifference to the serious medical needs and safety of inmates at JHCC.

**STANDARD OF DECISION**

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The "plausibility

standard" announced in *Twombly* and *Iqbal* is not a "heightened standard" of pleading, but rather a "refined standard." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (*citing Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011)). Under the "refined standard," plausibility refers "to the scope of the allegations in the complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik*, 671 F.3d at 1191; *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (*quoting Twombly*, 550 U.S. at 570).

Further, the Tenth Circuit has noted that "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context." *Khalik*, 671 F.3d at 1191 (*quoting Kansas Penn Gaming*, 656 F.3d at 1215). "Thus, [it has] concluded the *Twombly/Iqbal* standard is 'a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'" *Id*. (*quoting Robbins*, 519 F.3d at 1247).

"In other words, Rule 8(a)(2) still lives. There is no indication the Supreme Court intended a return to the more stringent pre-Rule 8 pleading requirements." *Khalik*, 671 F.3d at 1191. It remains true that "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*quoting Twombly*, 550 U.S. at 555); *see also al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009) ("*Twombly* and *Iqbal* do not require that the complaint include all facts necessary to carry the plaintiff's burden."). However,

"complaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants." *Robbins,* 519 F.3d at 1249. Thus, "[t]he *Twombly* standard may have greater bite in such contexts …." *Id.* "[I]t is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Id.* at 1250 (emphasis in original).

Finally, "[w]hile the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in [its] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik*, 671 F.3d at 1192 (*citing Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002)). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and 'that a recovery is very remote and unlikely.'" *Sanchez v. Hartley*, 810 F.3d 750, 756 (10th Cir. 2016) (*citing Twombly*, 550 U.S. at 556).

## DISCUSSION

Defendant moves to dismiss on several grounds: (1) Plaintiff does not plausibly allege that Defendant personally participated in the events underlying Plaintiff's Eighth Amendment claim; (2) Plaintiff's supervisory allegations against Defendant are insufficient to state a claim; and (3) Plaintiff's First and Fourteenth Amendment claim that Defendant deprived her of her liberty interest in her parent-child relationship should be dismissed.

> (1) *Plaintiff does not allege that Defendant personally participated in the alleged Eighth Amendment violation.*

Personal participation is "an essential" element in a § 1983 action. *Bennett v. Passic*, 545 F.2d 1260, 1262-1263 (10th Cir. 1976). Plaintiff does not allege that Defendant personally participated in the events underlying her Eighth Amendment claim.[1] Plaintiff asserts that Defendant was "responsible for inmate safety at JHCC" [Doc. No. 4 at ¶ 33], but she does not allege that Defendant was involved in the incident that forms the basis of the First Amended Complaint. Thus, Plaintiff's allegations against Defendant appear to be based not on Defendant's own actions but, at most, solely on his supervisory status as warden.

Although a supervisor may be held liable if he is affirmatively linked to a constitutional violation, "Section 1983 does not authorize liability under a theory of respondeat superior." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). A plaintiff may establish this "affirmative link" through showing: "(1) personal involvement; (2) sufficient causal connection; and (3) culpable state of mind." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013).

Plaintiff does not allege that Defendant was personally involved in the decision to move McNeary to the therapeutic unit, that Defendant directed others to place McNeary in the therapeutic unit, or that Defendant had actual knowledge and acquiesced in a subordinate's decision to move McNeary. The First Amended Complaint simply states in

---

[1] Plaintiff asserts in her response that her injury "is fairly traceable to" Defendant. [Doc. No. 11 at 4]. That is not the standard.

a conclusory fashion that "McNeary was taken off suicide watch and placed in a therapeutic unit." [Doc. No. 4 at ¶ 20]. It does not allege who made this decision or who was involved in the transfer.

Further, Plaintiff's conclusory allegations, without supporting factual averments, are insufficient to state a claim on which relief can be granted. For instance, Plaintiff alleges that Defendant was aware upon McNeary's transfer to JHCC on August 10, 2017 of McNeary's history of mental illness, self-harming, and multiple suicide attempts. However, there are no facts alleged to support this conclusory assertion. Moreover, Plaintiff asserts that Defendant ignored McNeary's symptoms, but she does not allege that Defendant ever saw McNeary or that it was part of Defendant's daily responsibilities to evaluate and treat McNeary or that anyone reported McNeary's symptoms to Defendant. Assuming prison records documenting McNeary's symptoms existed, the "mere presence of records, by themselves, does not create the reasonable inference that [Defendant] read them." *Vega v. Davis*, 572 Fed. Appx. 611, 618 (10th Cir. July 22, 2014) (unpublished).[2] Plaintiff does not allege in her First Amended Complaint that Defendant read any of McNeary's records. Further, she does not allege that McNeary was exhibiting mental health symptoms from August 10, 2017 to August 23, 2017 while he was at JHCC.

*(2)    Plaintiff's supervisory allegations are insufficient to state a claim.*

Plaintiff asserts in a conclusory fashion that Defendant's "customs, practices, policies and/or procedures," or Defendant's "failure to promulgate appropriate policies or

---

[2] Unpublished opinion cited pursuant to FED. R. APP. P. 32.1(a) and 10TH CIR. R. 32.1.

procedures," led to McNeary's death. [Doc. No. 4 at ¶ 45]. Further, Plaintiff alleges that Defendant failed to adequately train, supervise, investigate, and discipline employees. However, Plaintiff fails to allege specific deficiencies in policies, training, or supervision, or explain how McNeary's suicide could have been avoided with different policies, training, or supervision. Rather, Plaintiff implies that someone failed to check McNeary's cell every 15 minutes because he had been dead for about 30 minutes before he was found.[3] A supervisor may be held liable only for his own unconstitutional or illegal policies, and not for the tortious acts of his employee. *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). Plaintiff fails to sufficiently allege that Defendant's policies, procedures, or practices were the moving force behind the alleged constitutional violation.

Plaintiff also alleges that Defendant's alleged constitutional violations "occurred as a direct and proximate result of inmate overcrowding." [Doc. No. 4 at ¶ 49]. However, there are no factual averments to support that McNeary's death was the result of overcrowding, budget cuts, or understaffing at JHCC. Plaintiff generally addresses overcrowding, budget cuts, and understaffing in the Oklahoma Department of Corrections in 2017 on pages 4-5 of the First Amended Complaint, but never ties these conclusory allegations to JHCC or McNeary's death. Further, Plaintiff's allegation that the mental health units at the Oklahoma State Penitentiary and JHCC were consolidated on September 18, 2017 adds no support to his overcrowding allegation, because McNeary died on August 23, 2017, one month prior to the consolidation.

---

[3] Likewise, Plaintiff provides no factual support for her assertion that McNeary had been dead for 30 minutes.

7

> (3) *Plaintiff has failed to state a claim that Defendant deprived her of her right of familial association under the First and Fourteenth Amendments.*

Plaintiff alleges that Defendant deprived her of her First and Fourteenth Amendment rights of familial association with her son. To state a claim under § 1983, Plaintiff must allege intent on Defendant's part to deprive her of her protected relationship with her son. *Trujillo v. Bd. of County Comm'rs of Santa Fe County*, 768 F.2d 1186, 1190 (10th Cir. 1985). To meet this requirement, Plaintiff must allege that Defendant directed his conduct at the intimate relationship with knowledge that the conduct would adversely affect that relationship. *Griffin v. Strong*, 983 F.2d 1544, 1548 (10th Cir. 1993). Further, the intent must be directed at Plaintiff's rights because the intent cannot be transferred from McNeary to Plaintiff. *Trujillo,* 768 F.2d at 1189-1190. Plaintiff fails to allege intent on Defendant's part to deprive Plaintiff of her protected relationship with her son.

## CONCLUSION

Based on the foregoing, Defendant's Motion to Dismiss for Failure to State a Claim [Doc. No. 8] is **GRANTED**. Plaintiff's claims are dismissed without prejudice to Plaintiff's right to amend her complaint.[4] Plaintiff may file an amended complaint within 21 days of this Order; failure to do so will result in the dismissal of this action with prejudice.

---

[4] Because the defects are potentially curable, the dismissal shall be without prejudice. In her response, Plaintiff requests leave to amend. [Doc. No. 11 at 11]. Pursuant to FED. R. CIV. P. 15(a)(2), leave to amend should be freely given "when justice so requires." "'[I]f it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief, the court should dismiss with leave to amend.'" *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1131 (10th Cir. 1994) (*quoting* 6 C. Wright & A. Miller, *Federal Practice & Procedure* § 1483, at 587 (2d ed. 1990)).

**IT IS SO ORDERED** this 18th day of October 2019.

TIMOTHY D. DeGIUSTI
Chief United States District Judge